No. 78.—JOHN J. STRAWBRIDGE, plaintiff in error, *vs.* H. T. MANN *et al.* defendants.

[1.] In 1841, a *fi. fa.* is issued, and on it is entered *nulla bona*. In 1847, a *ca. sa.* is issued in place of the *fi. fa.* In 1853, the *ca. sa.* is executed: *Held*, that when the *ca. sa.* was executed, the judgment had not become void, under the Act of 1823, as to dormant judgments.

Certiorari, in Bibb Superior Court. Decision by Judge POWERS.

On November 24th, 1841, John J. Strawbridge obtained a judgment, in the Inferior Court of Bibb County, against H. T. Mann and Samuel Moore; and on the next day, the 25th, *fi. fa.* was issued thereon, on which a return of *nulla bona* was made, Dec. 30, 1841, and a receipt for costs entered by the Clerk, July 11th, 1843, and no further entry. On the 17th March, 1847, *ca. sa.* was issued on said judgment, and an entry of arrest of the defendant, Moore, and bond and security taken, March 10th, 1853. At the next term, Moore not appearing, the plaintiff moved to forfeit his bond; upon which, Counsel for defendant moved to set aside the *ca. sa.* and declare the judgment dormant, because no return had been made on the *fi. fa.* or *ca. sa.* for seven years preceding the arrest, and that the *fi. fa.* was void because issued within four days after the judgment. The Inferior Court sustained the motion and ordered the arrest to be discharged, and the judgment to be declared dormant. On *certiorari* to the Superior Court, the Judge sustained the proceedings of the Inferior Court and dismissed the *certiorari;* and this decision is assigned as error.

W. & W. C. Poe, for plaintiff in error.

Rutherford, for defendant in error.

*By the Court.*—Benning, J. delivering the opinion.

Was the judgment dormant at the time of the arrest of Moore, the defendant therein?

This is the only question.

The arrest took place within less than seven years from the date of the *ca. sa.* The date of the *ca. sa.* was within less than seven years from the date of the judgment. The *ca. sa.* had been preceded by a *fi. fa.* on which was an entry of *nulla bona.*

Such being the facts, was the judgment void by the opera-

tion of the Act commonly called the Dormant Judgment Act?

The first section of that Act is in these words: "All judgments, that have been obtained since the said 19th day of December, 1822, and all judgments that may be hereafter rendered in any of the Courts of this State, on which no execution shall be sued out, or which executions, if sued out, no return shall be made by the proper officer for executing and returning the same, within seven years from the date of the judgment,. shall be void and of no effect: *Provided*, that nothing in this Act contained shall prevent the plaintiff or plaintiffs, in such judgments, from renewing the same within the expiration of the said seven years, in cases where, by law, he or they would be otherwise entitled so to do, but the lien of such revived judgments on the property of the defendants thereto, shall operate only from the time of such revival."

This Statute, with respect to this section of it, is one of those to which this Court has applied the principle of *equitable* interpretation. That principle is one which makes a Statute include a case which, though not within the words of the Statute, is within the mischief aimed at by the Statute; or exclude a case, which though within the words, is not within the mischief.

This principle, in both of its modes of operation, has, by this Court, been applied to this Statute; in the first of the modes in *Booth vs. Williams*, (2 *Kelly*, 253); in the second, in *Wiley et al. vs. Kelsey et al.* (3 *Kelly*, 275.) *In Booth vs. Williams*, one entry had been made within seven years from the date of the judgment. That case, therefore, was *not within* the words of the Statute; yet, the Court considering the case to be within the mischief, held it to be included within the Statute. In *Wiley et al. vs. Kelsey et al.* there had been no return or entry during a period of seven years. That case, therefore, *was within the words* of the Act, as they had been construed by the Court, in *Booth vs. Williams;* and yet, the case was considered, by the Court, not within the mischief; and therefore, not within the Act.

Let us, then, applying this principle of interpretation to the Statute, see if this case is within the Statute.

And first—if the case is within the Statute at all, it must be because it is within the *mischief;* for it is not within the *words.* There was an entry upon the *fi. fa.* within fewer than seven years from the date of the judgment.

Was the case, then, within the *mischief?* What was the mischief the Statute wished suppressed? It was some mischief which the Statute thought could be suppressed, by an entry's being made upon executions once every seven years. So, in effect, held this Court in *Booth vs. Williams.* But what possible mischief is there which could be suppressed by an entry's being made on executions once every seven years, which would not be equally suppressed by the happening of what happened in this case—which was, an entry of no property, made within seven years of the date of the judgment—a return into office of the *fi. fa.* made, within seven years from the date of the entry—an issuing of a *ca. sa.* occurring on the return of the *fi. fa.*—occurring, within seven years from the date of said entry. Lastly, an arrest under the *ca. sa.* made within seven years from the issuing of the *ca. sa. ?* I can conceive of none.

If there is none, then what happened in this case, was sufficient to prevent the case from being within the mischief which it was the object of the Statute to suppress; and so, to prevent it from being within the Statute.

And this case is distinguishable from that of *Booth vs. Williams,* in this: that in that case, there was no return of the *fi. fa.* into *office* with an entry standing on it of *nulla bona*—no issuing of a *ca. sa.* on the return of the *fi. fa.*—two things, both of which, in this case, happened within the first seven years after the date of the judgment—two things, which, taken together, must be considered as calculated to be fully as beneficial to creditors of or purchasers from a defendant in *fi. fa.* as would be any mere entry on the *fi. fa.* made by the Sheriff.

And this leads me to remark, that the mischief which this Statute was intended to suppress, was, if we are to judge by the preamble of the Statute which this amends, or by the *proviso* to the first section of this, itself, not a mischief to which

*defendants* in judgment were subject, but a mischief to which the *creditors* of, and the *purchasers* from such defendants were subject. But in this case, the party asking the benefit of the remedy, is neither such a purchaser nor such a creditor. He is one who stands in the place of such a defendant, or in a place no better than his.

Upon the whole, I may say that for these reasons and perhaps others, a majority of this Court consider this case to be not within the Statute; and so, that the judgment of the Court below ought to be reversed.

As for myself, it would not be right for me to leave the impression, that I think this Statute such as to require an entry to be made on executions once every seven years, to keep judgments from becoming dormant. I think the Statute such, that if one entry is made at any time within seven years from the date of the judgment, it will be sufficient to keep the judgment from falling within the Statute, and from becoming dormant. I am *sure* that the *words* of the Statute are such that if this is done, it will be sufficient. And in my opinion, the rule of rules in the interpretation of Statutes, is to follow the words, if their meaning is plain. This rule, it is true, I should feel myself at liberty to depart from, in the case of some old English Statutes, and some Statutes of our own which pursue old English Statutes, such as the Statute of Frauds and Statutes of Limitation; and in the case of a few other Statutes with respect to which, as with respect to those named, a different rule has been used so long as to have become as well known as the words of the Statutes, and to have been recognized in various ways by the legislative power as the true rule.

But as a general thing, with respect to the Acts of our own Legislature, I should feel myself rigorously bound down to the words. The words of those Acts are, what the great majority of the people of the State shape their actions by. It is the words only, that are published to them—and when, after they have followed the words of the law, they are told by the Courts that they have not followed the law, they feel, that for them,

the law has been turned into a snare.    And it is difficult to say that they have not the right so to feel.

I am aware of nothing in the Statute under consideration, that requires any departure from the rule, that the words, if their meaning is plain, must govern.

At Common Law, the lapse of time served merely as a ground for presuming a judgment paid, until shown to be unpaid.    So was it still more decidedly by our Statute of 1812.    (*Cobb's Dig.* 496.)    This, it seems to me, is not a bad rule.    Why, therefore, should we strain a Statute, to make the Statute repeal more of the rule than the Statute would, without straining, repeal?    The Statute, without any straining, will find a number of cases to operate upon.    These let it have.    But why not leave the rest to the old law—that law which, for so many centuries, England has found to work well—that law which most, if not all, I believe, of the other States of this Union have adopted or enacted and still keep in force.

Of course, therefore, I concur in thinking the judgment, of the Court below ought to be reversed.